BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE VEHICLE CARRIER SERVICES ANTITRUST LITIGATION | MDL Docket No. 2471 |

**INTERESTED PARTY RESPONSE OF THE *SPICER* AND *HEILICHER*
PLAINTIFFS IN SUPPORT OF THE MOTION OF PLAINTIFFS
JOAN MACQUARRIE AND BRENDA KEEGAN FOR TRANSFER AND
CONSOLIDATION OF THE RELATED ACTIONS TO THE NORTHERN
DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407**

**I.     INTRODUCTION**

Plaintiffs Sean Spicer, Phyllis Rosen, Gustavo Adolfo Perez, Jennifer Frozena, Matthew Heilicher, Elizabeth Powers Keller, Eric L. Meth, and Jeff Rubinstein (the "*Spicer* and *Heilicher* Plaintiffs") file this Response in support of the Motion of Plaintiffs Joan MacQuarrie and Brenda Keegan for Transfer and Consolidation of the Related Actions to the Northern District of California Pursuant to 28 U.S.C. § 1407 (Dkt. No. 1) (the "Motion").[1]  The Motion seeks transfer and consolidation of six related antitrust class actions, currently pending in four different district courts, to the United States District Court for the Northern District of California.  After the Motion was filed, the *Spicer* and *Heilicher* Plaintiffs filed two additional related complaints in the Northern District of California, *Spicer v. Nippon Yusen Kabushiki Kaisha*, No. 13-cv-2894-DMR (June 24, 2013) and *Heilicher v. Nippon Yusen Kabushiki Kaisha*, No. 13-cv-3000-EDL (June 28, 2013) (with all actions identified in the Motion collectively "Related Actions").  All of

---

[1] The Motion was filed by the Plaintiffs in *MacQuarrie v. Kaisha*, No. 3:13-cv-02409-JST (N.D. Cal.) (filed May 28, 2013) ("*MacQuarrie*").

the Related Actions are against companies that provide Vehicle Carrier Services[2] to original equipment manufacturers for purposes of shipping cars, trucks, and other four-wheeled vehicles across waterways.

On June 25, 2013, Esteban Adame, plaintiff in *Adame v. Nippon Yusen Kaushiki Kaisha et al.*, No. 3:13-cv-00651-HLA-JPBT (M.D. Fla., filed June 6, 2013) ("*Adame*") filed a response to the Motion supporting consolidation of the Related Actions and transfer to the United States District Court for the Northern District of California (MDL No. 2471, Dkt. No. 2). On June 27, 2013, Plaintiffs in *Martens Cars of Washington et al. v. Nippon Yusen Kaushiki Kaisha et al.*, No. 3:13-cv-02696-EDL (N.D. Cal., filed June 12, 2013) ("*Martens Cars*") also filed a response supporting transfer of the Related Actions to the United States District Court for the Northern District of California (MDL No. 2471, Dkt. No. 9).

For the reasons detailed below, the *Spicer* and *Heilicher* Plaintiffs agree with *MacQuarrie*, *Adame*, and *Marten Cars* Plaintiffs that the Related Actions should be transferred to the Northern District of California, which is the most appropriate transferee forum, for consolidated or coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407.

Compelling circumstances support consolidation and transfer under Section 1407. The Actions involve an identical group of Defendants: Nippon Yusen Kabushiki Kaisha, NYK Line (North America) Inc., Wilh. Wilhelmsen Holding ASA, Wilh. Wilhelmsen ASA, Mitsui O.S.K. Lines, Ltd., Kawasaki Kisen Kaisha, Ltd., "K" Line America, Inc., Eukor Vehicle Carriers Inc., Wallenius Wilhelmsen Logistics AS, Wallenius Wilhelmsen Logistics Americas LLC, Wallenius

---

[2] "Vehicle Carrier Services" refers to the business of providing ocean transportation of vehicles, such as cars, trucks, or other four-wheeled vehicles by use of large vehicle carriers known as Roll On/Roll Off vessels, or "RoRos."

Lines AB, Compañía Sud Americana de Vapores S.A., Toyofuji Shipping Co., Ltd., and Nissan Motor Car Carrier Co., Ltd. (collectively "Defendants").[3]

Each Action alleges that the Defendants and unknown conspirators agreed, combined, and conspired to fix, raise, maintain, and/or stabilize the prices of Vehicle Carrier Services in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and corresponding state antitrust and consumer protection statutes. All actions seek certification of a class consisting of indirect purchasers of these Vehicle Carrier Services, who by virtue of the artificially inflated prices of Vehicle Carrier Services, were harmed in their purchase of automobiles and other four-wheeled vehicles.[4]

Coordination or consolidation is clearly appropriate and necessary to avoid duplicative, burdensome, and unnecessary discovery and pre-trial proceedings. No discovery or briefing has taken place in any of the Related Actions, and no substantive rulings have been made. Without coordinated determinations regarding liability, class certification, discovery, and other pre-trial matters, there is a serious risk of inconsistent pre-trial decisions in these overlapping class actions and any eventual tag-along cases.

---

[3] The *Schroeder* case pending in the Southern District of California includes antitrust claims against Mitsui O.S.K. Bulk Shipping (USA), Inc., WWL Vehicle Services Americas Inc., American Shipping and Logistics, Inc., American Auto Logistics, Inc., World Transport Co. Ltd., and World Logistics Service (U.S.A.), Inc. *Schroeder v. Kaisha*, No. 3:13-cv-01329-H-DHB (S.D. Cal., filed June 6, 2013) ("*Schroeder*"). These six additional entities are all subsidiaries of the Defendants in the Related Actions.

[4] All but one of the Related Actions are brought on behalf of a nationwide class of indirect purchaser plaintiffs. *Schroeder* alleges a class limited to California indirect purchaser plaintiffs.

The Northern District of California is the appropriate transferee forum for the consolidation or coordination of the Related Actions for the following reasons.

a. The Northern District of California includes within its jurisdiction the Port of Oakland, one of the busiest shipping ports in the North American continent;

b. The State of California has the highest volume and sales dollars of new automobile sales in the United States;[5]

c. The Northern District of California is geographically central to all parties to this litigation. Plaintiffs in this case are located throughout the United States with several residing in California, and several of the Defendants are located on the Asian continent;

d. San Francisco is a major metropolitan area convenient to the majority of parties and their counsel. Specifically, San Francisco offers three major airports with daily non-stop flights to and from several Asian airports, as well as cities throughout the United States;

e. The Northern District of California is best-suited to manage this litigation, because it has an extraordinary amount of experience in adjudging, managing, and overseeing multidistrict litigation, including antitrust litigation. The Honorable Jon S. Tigar is a highly respected jurist with over ten years of judicial experience in addition to many years of experience as a litigator of complex commercial actions. Judge Tigar currently has no multidistrict litigation pending before him, and thus would be able to provide the resources necessary for the efficient and expeditious management of a multidistrict litigation proceeding.

Accordingly, the Related Actions now before the Panel should be transferred for coordinated or consolidated pre-trial proceedings to the United States District Court for the Northern District of California before the Honorable Jon S. Tigar.

---

[5] http://www.nada.org/NR/rdonlyres/C1C58F5A-BE0E-4E1A-9B56-1C3025B5B452/0/NADADATA2012Final.pdf.

**II.     ARGUMENT**

"The objective of transfer [pursuant to 28 U.S.C. § 1407] is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20.131 (2004).  Thus, transfer and coordination or consolidation is appropriate under § 1407 when: (1) the actions involve one or more common questions of fact; (2) transfer would serve the convenience of the parties and witnesses; and (3) transfer would promote the just and efficient conduct of such actions.  28 U.S.C. § 1407(a).  The Related Actions satisfy these requirements.

**A.  Common Questions Abound and Support Centralization and Transfer**

The core factual allegations underlying each of the Related Actions are virtually identical.  Here, the Related Actions allege Defendants' common, concerted scheme to unlawfully and artificially inflate, fix, raise, maintain, or stabilize the price of Vehicle Carrier Services violates Section 1 of the Sherman Act, 15 U.S.C. § 1, and corresponding state antitrust and consumer protection laws.  Class cases alleging antitrust violations are generally well-suited for consolidation and transfer to a single transferee court and judge. *See*, *e.g.*, *In re Lithium Ion Batteries*, MDL No. 2420, 2013 WL 500765, *1 (J.P.M.L. Feb. 6, 2013).

Because the Related Actions involve many common—even identical—questions of fact and law, and common class allegations, efficiencies will be gained from coordination.  Furthermore, transfer and coordination of pre-trial proceedings is clearly appropriate to avoid the possibility of inconsistent rulings addressing these common questions and class certification.

B.    **Efficient Management of the Actions Requires Transfer for Coordinated Pre-trial Proceedings**

Transfer for coordinated pre-trial proceedings is authorized if the Panel determines that transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Relevant factors considered include whether centralization "will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *In re Marine Hose Antitrust Litig. (No. II)*, 531 F. Supp. 2d 1381, 1382 (J.P.M.L. 2008); *In re Southeastern Milk Antitrust Litig.*, 530 F. Supp. 2d 1359, 1360 (J.P.M.L 2008); *In re LTL Shipping Services Antitrust Litig.*, 528 F. Supp. 2d 1378, 1380 (J.P.M.L. 2007). The need to manage such large-scale discovery efficiently weighs heavily in favor of centralization. *See*, *e.g.*, *Southeastern Milk Antitrust Litig.*, 530 F. Supp. 2d at 1360 ("Centralization under Section 1407 will eliminate duplicative discovery . . . and conserve the resources of the parties, their counsel and the judiciary"); *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, 528 F. Supp. 2d 1372, 1373 (J.P.M.L. 2007) (same).

Here, there will likely be extensive document and deposition discovery relating to the Defendants' alleged scheme to fix the prices of vehicle shipping services. In addition, resolution of the common factual and legal issues in a single proceeding will serve the interests of judicial economy by conserving precious judicial resources. Accordingly, because these cases will require resolution of the same issues and coordination of extensive discovery, transferring the Actions for coordinated pre-trial proceedings is warranted.

### C. The Danger of Inconsistent Determinations Regarding Class-Related Issues and Pre-trial Rulings Favors Section 1407 Coordination or Consolidation

The danger of inconsistent determinations is an important factor in deciding whether to centralize multidistrict litigation. *See*, *e.g.*, *Southeastern Milk Antitrust Litig.*, 530 F. Supp. 2d at 1360 ("Centralization under Section 1407 will . . . prevent inconsistent pretrial rulings, especially with respect to class certification . . . ."); *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, 528 F. Supp. 2d at 1373 (same).

Here, all of the Related Actions have been brought as purported class actions, and the proposed classes are largely identical. Without transfer and coordinated proceedings, there would be a very real danger of inconsistent determinations regarding class-related issues and management orders. The same is also true regarding the common legal issues that will have to be decided. Accordingly, here, the possibility of inconsistent pre-trial rulings, especially with respect to liability and class certification, strongly supports consolidation of these Actions.

## III. THE NORTHERN DISTRICT OF CALIFORNIA IS THE MOST APPROPRIATE TRANSFEREE FORUM

The Northern District of California is the most appropriate transferee forum because the District Court for the Northern District of California and Judge Tigar are experienced in complex antitrust MDLs and similar proceedings, it is the most convenient forum, it bears the strongest nexus to this litigation, and it has a favorable caseload.

### A. The Northern District of California has Extensive Experience Efficiently and Successfully Managing Similar MDL and Class Proceedings.

The Panel has previously identified the Northern District of California as an appropriate transferee forum, and the Northern District of California frequently handles highly complex antitrust actions, including multidistrict litigation. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litigation*, Master File No. M07-1827 SI, MDL No. 1827 (N.D. Cal.); *In re Cathode*

*Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917 (N.D. Cal.); *In re Static Random Access Memory (SRAM) Antitrust Litigation*, MDL No. 1819 (N.D. Cal.); *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, MDL No. 1486 (N.D. Cal.).

The *Spicer* and *Heilicher* Plaintiffs agree with the *MacQuarrie* Plaintiffs that the Honorable Jon S. Tigar is an experienced jurist with a demonstrated proficiency in handling complex civil litigation. Judge Tigar has over ten years of judicial experience, including presiding over cases brought under Section 1 of the Sherman Act. *See, e.g.*, *Rheumatology Diagnostics Laboratory, Inc. v. Aetna, Inc.*, No. 12-cv-05847-JST, 2013 WL 3242245, (N.D. Cal. June 25, 2013); *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, No. 12-cv-06361-JST, 2013 WL 1563228 (N.D. Cal. Apr. 12, 2013).

In sum, the experience of the Northern District of California in handling complex antitrust class actions and multidistrict litigation, and the Ninth Circuit's and Northern District of California's extensive and developed authority and experience handling antitrust cases make it the most appropriate transferee forum. In addition, Judge Tigar's wealth of experience handling complex civil and class action litigation makes him an appropriate and capable transferee judge.

### B. The Northern District of California Is Geographically Central to Many of the Plaintiffs and Other Parties and the Most Convenient Forum.

Another significant, and sometimes controlling, factor in selecting a transferee forum is geographic location relative to the parties and the actions filed. Here, in the Related Actions, named Plaintiffs are located throughout the United States. Many plaintiffs in the Related Actions, including the *Spicer* and *Heilicher* Plaintiffs either reside in California, or chose to file there. In addition to the *Spicer* and *Heilicher* Plaintiffs, the *MacQuarrie*, *Adame* and *Martens Cars* Plaintiffs filed their complaints in, or support transfer to, this forum. Furthermore, each multinational Defendant maintains shipping lines, a terminal, or a port office within this district.

8

Moreover, because of the global nature of the conspiracy, there is no one location in the United States where the anticompetitive activity was centered or a single place where documents or witnesses are likely to be found. The Northern District of California, however, has a stronger geographical nexus to the Related Actions than New Jersey or Florida. California has the largest volume and sales value of new car sales in the United States. Further, the Port of Oakland, located in this District, is among the top five busiest ports in the United States.

Several of the Defendants are headquartered in Asia—either in Japan or Korea. The Judicial Panel on Multidistrict Litigation has repeatedly recognized that the Northern District of California is a convenient forum where parties are located in Asia. *See, e.g., In re: TFT-LCD (Flat Panel) Antitrust Litigation*, 483 F. Supp. 2d 1353, 1354 (J.P.M.L. Feb. 6, 2013) (The Northern District of California is "more conveniently located for the significant number of Asia-based Defendants."); *In re Lithium Ion Batteries Antitrust Litigation*, MDL No. 2420, 2013 WL 500765, *1 (J.P.M.L. Feb. 6, 2013) (The Northern District of California is "undoubtedly . . . the most convenient for the greatest number of parties in this litigation, including the defendants based in Asia.").

The Northern District of California is also very easily accessible to the parties, with ample access by both air and rail. The Northern District of California is home to three airports, San Francisco International Airport ("SFO"), Oakland International Airport, and Norman Y. Mineta San José International Airport, and is also easily accessible by rail through Amtrak. San Francisco International Airport is the 20th busiest airport in the world with 44,477,209 passengers passing through the airport in 2011, over two million of which traveled to or from Asia.[6]

---

[6] DEP'T OF TRANS., OFFICE OF THE ASSISTANT SECRETARY FOR AVIATION AND INTERNATIONAL AFFAIRS, U.S. INTERNATIONAL AIR PASSENGER AND FREIGHT STATISTICS (Dec. 2011), *available*

Accordingly, the geographically central Northern District of California, with its convenient travel infrastructure and relative proximity to many of the parties, is the most appropriate transferee court.

### C. The Northern District of California and Judge Tigar Have Favorable Caseloads.

Favorable caseload burden is a factor considered by the Panel when choosing the most appropriate transferee forum. *See, e.g.*, *In re Aimster Copyright Litig.*, 177 F. Supp. 2d 1380, 1382 (J.P.M.L. 2001). The Northern District of California has favorable caseload and docket statistics.

According to the most recent Federal Court Management Statistics, there are 519 cases pending per judge in the Northern District of California, which is below the national average. In addition, there are only 454 civil cases more than three years old in the Northern District of California and in 2012, the average amount of time from the date of filing to disposition for civil matters was low at an average of 6.3 months. The Northern District of California also has a favorable MDL docket. As of May 14, 2013, it had 17 pending MDLs assigned to 13 District Judges.[7] Additionally, Judge Tigar has a favorable caseload, as he is not currently presiding over any multidistrict litigation.

### V. CONCLUSION

Accordingly, for all of the reasons specified above, the *Spicer* and *Heilicher* Plaintiffs respectfully request that the Panel transfer the Actions to the United States District Court for the

---

*at* http://www.dot.gov/sites/dot.dev/files/docs/US%20International%20Air%20Passenger%20and%20Freight%20Statistics%20Report%20for%20December%202011.pdf.

[7] Distribution of Pending MDL Dockets, *available at* http://www.jpml.uscourts.gov/sites/jpml/files/Pending%20MDL%20Dockets_By%20District_May-14-2013.pdf.

Northern District of California for consolidated or coordinated pre-trial proceedings before Judge Jon S. Tigar.

| | |
|---|---|
| Dated: July 8, 2013 | **CAFFERTY, CLOBES, MERIWETHER & SPRENGEL LLP**<br><br> /s/Bryan L. Clobes<br>Bryan L. Clobes<br>Ellen Meriwether<br>Kelly L. Tucker<br>1101 Market Street<br>Suite 2650<br>Philadelphia, PA 19107<br>(215) 864-2800<br>Fax: (215) 864-2810<br>bclobes@caffertyclobes.com<br>emeriwether@caffertyclobes.com<br>ktucker@caffertyclobes.com<br><br>**FOOTE, MIELKE, CHAVEZ & O'NEIL LLC**<br><br>Robert M. Foote<br>Kathleen C. Chavez<br>10 West State Street<br>Suite 200<br>Geneva, IL 60134<br>(630) 232-7450<br>Rmf@fmcolaw.com<br>kcc@fmcolaw.com<br><br>**GOLOMB & HONIK, P.C.**<br><br>Kenneth J. Grunfeld<br>1515 Market Street<br>Suite 1100<br>Philadelphia, PA 19102<br>(215) 985-9177<br>kgrunfeld@golombhonik.com<br><br>*Counsel for Plaintiffs Sean Spicer, Phyllis Rosen, Gustavo Adolfo Perez, Jennifer Frozena, Matthew Heilicher, Elizabeth Powers Keller, Eric L. Meth, and Jeff Rubinstein* |